[No. 12415.  Department Two.  August 11, 1915.]

MILDRED VEYSEY, *Appellant*, v. CHARLES VEYSEY *et al.*,
*Respondents.*[1]

EXECUTORS AND ADMINISTRATORS—DECREE OF DISTRIBUTION—VACA-
TION—FRAUD—EVIDENCE—SUFFICIENCY. The settlement of an estate
by a decree entered after citation and notice by publication, when
the minor, her guardian, and her attorney were present in court,
will not be set aside on allegations of fraud and collusion with her
attorney, where there was no evidence of the collusion, evidence that
the decree was entered in accordance with a prior settlement was
circumstantial, and the burden of establishing the fraud was not
sustained.

EXECUTORS AND ADMINISTRATORS — SALES — FRAUD OF EXECUTOR—
EVIDENCE—SUFFICIENCY. The fact that an executor's sale of one-half
of the stock in a corporation was made for $2,900 and that a few
months thereafter the purchaser resold the stock for $3,520 to the
executor, who owned the other half, is not sufficient alone to estab-
lish fraud; it appearing that the purchaser was an entire stranger
at the time of the sale, which was made in good faith without any
arrangement for the executor's benefit.

JURY—JURY TRIAL—RIGHT TO. An action in its essence for a
discovery and accounting is of equitable cognizance and triable to
the court without a jury.

Appeal from a judgment of the superior court for Che-
halis county, Sheeks, J., entered March 21, 1914, in favor
of the defendants, in an action for an accounting, tried to
the court. Affirmed.

*Van Nuys & Hunter* and *Frank Beam*, for appellant.

*W. H. Abel*, for respondents.

[1]Reported in 151 Pac. 39.

ELLIS, J.—This action was commenced on October 31, 1913, by the plaintiff, as sole heir of Marion Veysey, deceased, against the defendant Charles Veysey, as administrator of the partnership estate of Charles Veysey and Marion Veysey, and as executor of the will of Marion Veysey, for an accounting as to both estates. The plaintiff also sought a personal judgment against the community consisting of the defendants Charles Veysey and Nettie Veysey, his wife. By ancillary proceedings, certain lands in Chehalis county belonging to the defendants were attached. After a lengthy trial in which voluminous evidence on both sides was taken, the trial court entered a judgment dismissing the action and vacating the writ of attachment. The court made no separate findings and conclusions of law. A motion for a new trial was denied. The plaintiff appeals.

We shall not attempt to set out even in substance the lengthy complaint with its numerous and sweeping charges of fraud, nor shall we attempt any detailed discussion of the evidence, since to do either would extend this opinion to interminable length without profit to any one.

For some years prior to the death of Marion Veysey, he and the respondent Charles Veysey were engaged in a mercantile business in Montesano, Washington, which was incorporated as Veysey Brothers, Inc., with a capital stock of $11,500, divided into one hundred and fifteen shares of a par value of one hundred dollars each. The two brothers each owned one-half of the stock. They also conducted a partnership mercantile business at Elma, Washington. Marion Veysey died on October 13, 1905, in Chehalis county, Washington, leaving as his sole heir the appellant, Mildred Veysey, then about fourteen or fifteen years of age. His estate consisted of individual and partnership property. The individual property comprised his fifty-seven and one-half shares of the capital stock of Veysey Brothers, Inc., and a few personal effects of very little value. The partnership estate consisted of a one-half interest in the mercantile busi-

ness at Elma, certain book accounts, notes, mortgages, and certain real estate.

On January 8, 1906, one J. M. Stamper was appointed special administrator of the estate. He served until March 19, 1906, when he was discharged. On January 26, 1906, Charles Veysey, the respondent herein, was appointed sole administrator of the partnership estate. Shortly before his death, Marion Veysey uttered a nuncupative will, making the respondent Charles Veysey his executor. On its probate, the court held this will valid as to the personalty, but not as to the real estate, and on March 12, 1906, appointed Charles Veysey executor of the will. He qualified as such and continued to act as executor under the will and as administrator of the partnership estate until January 7, 1907, when by decree of the court the property belonging to the estate was distributed and the administrator and executor was discharged. The appellant attacks this decree of distribution as being procured through fraud and without any accounting on the part of the executor and administrator as to the estate which came into his hands, and upon the further ground that it was procured through collusion of the respondent and his attorney with the attorney for the appellant and her guardian. This, aside from one other charge of fraudulent action on the respondent's part, is all that we deem it necessary to discuss in this opinion, since, if this decree of distribution was entered without fraud, it is clearly as binding as the judgment of a court having jurisdiction in any other case.

As leading up to this decree, the evidence shows that the executor and administrator filed his final report on December 24, 1906, showing the assets of the estate, consisting of a balance of $1,472.82, cash on hand; that the partnership estate consisted of seven pieces of real estate, three at Elma and four at Montesano, Washington; $246.75 balance due the partnership on certain machine contracts; approximately $3,300 in notes payable to the partnership, and open ac-

counts amounting to $4,611.91; that all liabilities of the estate had been paid, except $1,891.73 owed by the partnership. In this report the respondent prayed that the estates, both individual and partnership, be closed and the executor and administrator be discharged.

On January 7, 1907, the appellant and one George L. Thompson, her stepfather, who had been appointed her guardian, also petitioned the court to set apart to her in distribution as her share of the estate $4,000 in cash and all notes, mortgages, accounts and conditional sale contracts and choses in action belonging to the estate; that there be distributed to the respondent Charles Veysey all of the real estate belonging to Marion Veysey and to the partnership estate of Veysey Brothers; that the minor be charged with the expenses of administration upon the estate, except the compensation of Charles Veysey as executor and administrator, which he had agreed to waive, and that the minor also be charged with all unpaid claims against the partnership estate, excepting a debt due from the partnership to Veysey Brothers, Inc., amounting to $1,254.20, which Charles Veysey had agreed to pay. This petition was signed and verified both by the minor, Mildred Veysey, and by George L. Thompson, her guardian, on January 7, 1907.

Pursuant to the administrator's final report and this petition of the minor and her guardian, the court, on January 7, 1907, entered its decree, in which it was ordered that Charles Veysey pay to Mildred Veysey $4,000 in cash and transfer to her all the notes, mortgages, conditional sale contracts and book accounts belonging to the Veysey Brothers; that out of the $4,000, Mildred Veysey pay all the costs of administration, including $1,254.21 paid by Charles Veysey for the expenses of the special administrator, and that all the real estate belonging to the partnership be distributed to Charles Veysey. By that decree, the estate, both individual and partnership, was declared settled and the executor and administrator was discharged. The record shows that this

decree was entered after citation by publication and when
both the minor and her guardian and also their attorney were
present in court.   Both the appellant and her guardian tes-
tified that they were induced to sign their petition for settle-
ment through misrepresentations of their attorney as to
what she would receive by such a settlement.   The attorney
is now dead.   His version of the transaction could not be
had.   The respondent's testimony, however, is circumstantial
and shows that the whole matter of settlement was talked
over by himself, his attorney, Thompson the guardian, and
his attorney in December, 1906, and that the final decree
embraced the terms of settlement as agreed upon at that time.
Also that Thompson and his attorney came to the store in
Montesano, checked over the accounts, notes and mortgages
in question and took the ledger containing the accounts away
with them.   We are convinced from a most careful considera-
tion of all the evidence that the charges of fraud in procur-
ing this settlement are wholly unfounded.   We find no evi-
dence whatever of any collusion between the respondent and
the attorney for the minor and her guardian.

It is also charged that the respondent never complied with
the decree.   Thompson, the guardian, testified that he re-
ceived on this settlement only $1,411.78.   He identified, how-
ever, his signature to receipts and his indorsements as guard-
ian on checks given by respondent aggregating over $6,800,
which the evidence indicates must have passed in connection
with this transaction.   The respondent accounted for each of
these checks and receipts.   As we read it, the evidence
strongly preponderates in favor of the view that the guard-
ian did receive everything to which he was entitled under
the decree.

The appellant also claims that the respondent withheld
from the operation of this decree the lot and store building
in Montesano in which was conducted the mercantile business
of Veysey Brothers, Inc.   The evidence, however, shows that
this claim was first made shortly after the decree of distribu-

tion and that the respondent then brought a suit to quiet title against the minor and her guardian, which action resulted in a decree finding that the property in question was his individual property and quieting the title in him. The appellant and her guardian in the present action testified that they knew nothing of that suit until after final decree, and it is asserted that the decree was procured through collusion between their attorney and the respondent. The record in that case, however, shows proof of personal service on the appellant and her guardian. Moreover, her guardian identified his signature to the answer and to the verification thereto in that case. There is nothing in the record which we consider capable of raising even a suspicion of collusion between the deceased attorney for the minor and her guardian and the respondent, Charles Veysey, in that suit. In any event, the evidence in this case touching the title to this lot is, we think, convincing that Charles Veysey actually owned the property in question and that the decedent, Marion Veysey, never had any interest therein, except an option to acquire a one-half interest by payment of one-half the purchase price thereof, which option he never exercised.

While there are many other charges of irregularity and fraud and many transactions in connection with the estate the good faith of which is impugned, none of them is sufficiently definite or supported by sufficient evidence to merit consideration, save one. The respondent, while acting as administrator of the estate, procured an order to sell, and sold, the fifty-seven and one-half shares of the capital stock of Veysey Brothers, Inc. This stock was sold to one Hanna for $2,900. A few months subsequently, the respondent himself purchased this stock from Hanna for $3,520. It is charged that the sale to Hanna was a private sale, whereas a public sale was ordered. The charge is unfounded. The record in the probate proceeding shows that the sale was made at public auction after notice, as required by order of court. It is also asserted that this was in fact a sale to Charles Veysey

himself; that Hanna acted merely as a dummy in the transaction, and that the sale was therefore fraudulent in law. A careful consideration of the evidence in this connection convinces us that this charge is also unfounded. The evidence shows that the respondent was wholly unacquainted with Hanna, and there is nothing whatever to indicate that the sale was collusive. The respondent testified, in substance, that he would have been glad to purchase the stock but knew that it would be illegal for him to do so, either directly or indirectly; that the sale was made in perfect good faith and without any arrangement, either direct or indirect, with Hanna that it should be for the respondent's benefit. The only circumstance tending to cast any suspicion whatever upon the good faith of this transaction is the fact that the respondent afterwards purchased the stock from Hanna at a considerable advance. That circumstance alone is wholly insufficient to establish the fraud charged.

Some point is made of the fact that the appellant's request for a trial by jury was denied. The complaint is in its essence a bill for discovery and accounting. The action is therefore one of equitable cognizance, properly triable to the court.

We have given this case most careful consideration. Practically all of the questions involved are questions of fact. The law involved is elementary. The burden was upon the appellant to establish her charges of fraud by a preponderance of the evidence. She has failed to sustain this burden. The judgment is affirmed.

MORRIS, C. J., MAIN, FULLERTON, and CROW, JJ., concur.